DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| THE COMPLAINT OF CARPE DIEM 1969 ) | |
| LLC, AS OWNER and EAST END ) | |
| WATERSPORTS, LTD., d/b/a NAUTI ) | Civil No. 2017-56 |
| NYMPH POWERBOAT RENTALS, AS ) | |
| OWNER PRO HAC VICE OF THE NAUTI ) | |
| NYMPH #54 (hull identification ) | |
| number RJDU0003K112), ITS ) | |
| ENGINES, TACKLE, APPURTENANCES, ) | |
| EQUIPMENT, ETC., IN A CAUSE OF ) | |
| EXONERATION FROM OR LIMITATION ) | |
| OF LIABILITY, ) | |
| ) | |
| Petitioners. ) | |
| ) | |

**ATTORNEYS:**

**Niva Maria Harney-Hiller, Esq.**
**Jennifer Quildon Brooks, Esq.**
Hamilton Miller & Birthisel
Miami, FL
 *For the petitioners,*

**Vincent A. Colianni, Esq.**
**Vincent A. Colianni, II, Esq**
Colianni & Colianni
St. Croix, VI
 *For Susan Graham and Michael Graham.*

## ORDER

**GÓMEZ, J.**

 Before the Court is the motion of Carpe Diem 1969 LLC and East End Watersports, Ltd., d/b/a Nauti Nymph Powerboat Rentals to approve an *ad interim* stipulation and to issue a monition and injunction. Also before the Court is the unopposed motion of

Susan Graham and Michael Graham to stay this case and lift the stay in a related Superior Court matter.

## I.     FACTUAL AND PROCEDURAL HISTORY

Susan Graham alleges that on or about November 26, 2016, she was a passenger on board the Nauti Nymph #54 ("the vessel"). Nauti Nymph #54 is a motor vessel owned by Carpe Diem 1969 LLC and operated and possessed by East End Watersports, Ltd. (collectively, the "owners"). The captain of the vessel operated the vessel at high speeds in rough seas. As a result, Susan Graham fell and fractured her thoracic spine.

Susan Graham and Michael Graham (the "Grahams") filed suit in the Superior Court (the "Superior Court Action") against the owners.

The owners then filed the instant limitation of liability action in this Court (the "federal case"). ECF No. 1. The owners also filed a motion seeking: (1) the entry of an *ad interim* stipulation; and (2) the issuance of a monition and an injunction restraining any proceedings against the owners that pertained to the limitation of liability action. The motion asserts that the value of the vessel is $287,658.

The Grahams filed an answer to the limitation of liability complaint in which both Susan Graham and Michael Graham filed claims. ECF No. 7. On November 6, 2017, the judge in the Superior Court Action stayed that matter. *See* ECF No. 26-1.

On January 16, 2018, the Grahams filed an unopposed motion in the federal case (the "stay motion") seeking to: (1) stay the federal case, and (2) lift the stay in the Superior Court Action.

## II. DISCUSSION

The Limitation of Liability Act grants shipowners the right to limit liability for injury and damage claims arising out of accidents involving their vessels. *See* 46 U.S.C. § 30501, *et seq.* As the Supreme Court has explained, the animating purpose of the Act:

> was to encourage shipbuilding and to induce the investment of money in this branch of industry by limiting the venture of those who build the ships to the loss of the ship itself or her freight then pending, in cases of damage or wrong happening, without the privity, or knowledge of the shipowner, and by the fault or neglect of the master or other persons on board.

*Hartford Acc. & Indem. Co. of Hartford v. S. Pac. Co.*, 273 U.S. 207, 214 (1927). To that end, the Act provides that the liability of a shipowner arising out of a maritime accident

"shall not exceed the value of the vessel and pending freight," so long as the accident occurred "without the privity or knowledge of the owner." 46 U.S.C. § 3505. These protections extend to the owners of pleasure vessels. *See Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1228-29 (11th Cir. 1990).

Supplemental Rule F of the Federal Rules of Civil Procedure outlines the procedure to be followed in limitations actions. First, a shipowner must file a complaint in an appropriate district court within six months of receiving written notice of a claim. Fed. R. Civ. P. Supplemental Rule F(1); *see also* 46 U.S.C. § 30511(a). Thereafter, the shipowner must deposit with the court "a sum equal to the amount or value of the owner's interest in the vessel . . . , or approved security therefor." Supplemental Rule F(1); *see also* 46 U.S.C. § 20511(b)(1). If the shipowner opts to provide the district court with approved security for the cost of the vessel, he must also give security "for interest at the rate of 6 percent per annum from the date of the security." Supplemental Rule F(1). Additionally, the shipowner must provide security for costs and "such sums, or approved security therefor, as the court may from time to time

fix as necessary to carry out the provisions of the statutes as amended." *Id.*; *see also* 46 U.S.C. § 30511(b)(1).

After a shipowner files a limited liability complaint and complies with the requirements of Supplemental Rule F(1), the district court must stay all proceedings against the shipowner that involve issues arising out of the subject matter of the limitation action. *See* Supplemental Rule F(3); 46 U.S.C. § 30511(c). The district court will then issue a monition "direct[ing] all potential claimants to file their claims against the shipowner in the district court within a specified period of time." *Gorman v. Cerasia*, 2 F.3d 519, 523 (3d Cir. 1993) (internal quotation marks omitted); *see also* 46 U.S.C. § 30511(c); Supplemental Rule F(3)-(4). Additionally, "[o]n application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." Supplemental Rule F(3).

### III. ANALYSIS

The Court will address the parties' motions in the order in which they were filed.

### A. Motion for *Ad interim* Stipulation, Monition, and Injunction

The owners have moved for entry of an *ad interim* stipulation and the issuance of a monition and an injunction. The Court may not issue a monition or an injunction until the *ad interim* stipulation is approved. *See* Supplemental Rule F(3)-(4). As such, the Court will first consider whether approval of the Petitioners' *ad interim* stipulation is appropriate.

The owners argue that their *ad interim* stipulation is sufficient security that satisfies the requirements of Supplement Rule F(1) such that the Court must issue an injunction and a monition. Supplemental Rule F(1) requires a shipowner to either (1) "physical[ly] surrender . . . the vessel and pending freight to a trustee," *New York Marine Managers, Inc. v. Helena Marine Serv.*, 758 F.2d 313, 317 (8th Cir. 1985); *see also* Supplemental Rule F(1); (2) "deposit with the court . . . a sum equal to the amount or value of the owner's interest in the vessel and pending freight; or (3) deposit "approved security" for "the amount or value of the owner's interest in the vessel and pending freight," *id.* Complying with one of these three requirements "is a condition precedent to

obtaining the benefits of the Limitation Act." *New York Marine Managers, Inc.*, 758 F.2d at 317.

> Submission of an *ad interim* stipulation is one way of satisfying Rule F's requirement of the vessel or security for the vessel as a prerequisite to proceeding with a petition for limitation. The stipulation is *ad interim*, or temporary, so that if the value of the vessel is challenged the court may allow for 'due appraisement' of the vessel prior to entering a final order or approving a stipulation establishing the value of the vessel. 'Due appraisement' generally means appraisement proceedings which afford interested parties an opportunity to be heard and to challenge the appraisement offered by petitioner.

*Complaint of N. Lubec Mfg. & Canning Co.*, 647 F. Supp. 1132, 1134 (D. Me. 1986) (quoting Supplemental Rule F(7) (citation omitted)); *see also The Ontario No.* 1, 80 F.2d 85, 87–88 (2d Cir. 1935). (explaining that, "[a]lthough the rule is silent on the subject," a "long standing" practice permits a shipowner to "obtain ex parte the issuance of a monition and injunction if he posts an *ad interim* stipulation in an amount approved by the court after examining affidavits presented by [the shipowner]").

Of course, an *ad interim* stipulation must do more than simply name the sum a shipowner believes he may be obligated to pay. When a shipowner submits an *ad interim* stipulation secured by a surety bond, the stipulation is "a substitute for the

vessel itself." *See Hartford Accident & Indemnity Co. v. Southern Pacific Co.*, 273 U.S. 207, 218-19 (1927)). It follows that, to qualify as "approved security," an *ad interim* stipulation secured by a surety bond should provide a guarantee of payment in line with the guarantee afforded by holding the vessel in trust "for the benefit of [the] claimants." *See* Supplemental Rule F(1). At the very least, this should require a letter of undertaking executed by an appropriate surety. *See Karim v. Finch Shipping Co.*, No. CIV. A. 95-4169, 1998 WL 713396, at *2 (E.D. La. Oct. 6, 1998), *aff'd sub nom.* 177 F.3d 978 (5th Cir. 1999) (ordering shipowner to provide additional security because the court "ha[d] concerns about the stability and reliability of the current letter of undertaking proffered by Ocean Marine [Mutual Protection & Indemnity Association, Ltd.]"); *Matter of Compania Naviera Marasia S. A., Atlantico*, 466 F. Supp. 900, 902 (S.D.N.Y. 1979) (discussing practice, in connection with *ad interim* stipulations, of "accept[ing] letters of undertakings given by underwriters . . . in order to avoid the detention of vessels and the expense of posting security in other forms").

Here, the owners' *ad interim* stipulation provides that they "will deposit no more than the sum of $287,658.00 in the form of a surety bond with the Court's registry with interest at the rate of 6% per annum from the date hereof and costs, and Petitioners will pay said sum and/or deposit said bond into the Court within fifteen (15) days after the demand thereof by any Claimant." ECF No. 2, at 2. Significantly, the stipulation does not identify the surety. In addition, the Petitioners have not provided the Court with a letter of undertaking executed by a surety and guaranteeing payment.

"The court possesses great discretion in determining just what constitutes appropriate security." *Luhr Bros. Inc. v. Gagnard*, 765 F. Supp. 1264, 1268 n.4 (W.D. La. 1991); *see also Karim*, 1998 WL 713396, at *1 ("The Court has an absolute right to determine what constitutes approved security" (internal quotation marks omitted)). This Court has previously rejected an *ad interim* stipulation where, as here, the surety was not identified and no letter of undertaking was provided to the Court. *See In re Hollis B. Corp.*, No. CV 2016-14, 2016 WL 8732310, at *6 (D.V.I. Sept. 30, 2016) ("Because Hollis has failed to provide a letter of undertaking executed by an

appropriate surety, and because Hollis purports to limit its obligation to pay pursuant to the terms of its insurance policy, the Court holds that the *ad interim* stipulation is not "approved security."). Thus, because the Petitioners have failed to provide a letter of undertaking executed by an appropriate surety, the Court holds that the *ad interim* stipulation is not "approved security." See Supplemental Rule F(1).

Accordingly, the Court will deny without prejudice the Petitioners' motion for entry of an *ad interim* stipulation and issuance of a monition and an injunction.

### B. The Stay Motion

The Grahams have filed various stipulations regarding their claims in the Superior Court Action. Based on those stipulations, the Grahams contend that they may proceed with their claims in the Superior Court Action. On that basis, they request that the Court: (1) stay this action, and (2) lift the stay in the Superior Court action.

#### 1. Stay of this Action

Despite the stipulations filed by the Grahams, entry of a stay in this action would be premature. When a limitation of liability action is filed in federal court, the federal court

will stay the federal action and permit claimants to proceed on their related actions in state court "if the value of the vessel and its cargo exceeds the aggregate of the total number of claims filed against the owner" or "when a single claimant brings an action against the shipowner seeking damages in excess of the value of the vessel." *Gorman v. Cerasia*, 2 F.3d 519, 524-25 (3d Cir. 1993). In addition:

> In multiple-claimant cases, admiralty courts . . . should allow state court claims to proceed . . . [when] [m]ultiple claimants . . . reduce their claims to the equivalent of a single claim by agreeing and stipulating as to the priority in which the claimants will receive satisfaction against the shipowner from the limited fund."

*Magnolia Marine Transp. Co. v. Laplace Towing Corp.*, 964 F.2d 1571, 1576 (5th Cir. 1992).

Here, no *ad interim stipulation* has been approved by the Court, and no monition has been issued. As such, additional claimants may appear in this action. Thus, it would be inappropriate for the Court to enter a stay based on stipulations from the present claimants.

   2. **The Superior Court Stay**

This Court did not stay the Superior Court Action. That stay was issued by the Superior Court on its own initiative. The

*In the Matter of: The Complaint of Carpe Diem 1969 LLC, as Owner and East End Watersports, Ltd., d/b/a Nauti Nymph Powerboat Rentals, as Owner Pro Hac Vice of the Nauti Nymph #54 (Hull Identification Number RJDU0003K112), Its Engines, Tackle, Appurtenances, Equipment, Etc., in a Cause of Exoneration from or Limitation of Liability,*
Civil No. 2017-56
Order
Page 12

Court is unaware of any authority that would permit it to lift that stay under the circumstances presented here.

Accordingly, the Court will deny the stay motion in its entirety.

The premises considered; it is hereby

**ORDERED** that the motion to approve the *ad interim* stipulation is **DENIED without prejudice**; and it is further

**ORDERED** that the stay motion is **DENIED without prejudice**.

S\_____
**Curtis V. Gómez**
**District Judge**